UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 10- 2630 -CMM

UNITED STATES OF AMERICA

vs.

JOE FREEMAN MOORER, JR.,

        Defendant.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ____ Yes  __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  ____ Yes  __X__ No

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

BY: _____
        JARED M. STRAUSS
        ASSISTANT UNITED STATES ATTORNEY
        Court No.: A5501264
        99 N. E. 4th Street
        Miami, Florida 33132-2111
        TEL (305) 961-9062
        FAX (305) 530-7976
        Jared.strauss@usdoj.gov

# United States District Court

SOUTHERN **DISTRICT OF** FLORIDA

UNITED STATES OF AMERICA

V.

JOE FREEMAN MOORER, JR.

**CRIMINAL COMPLAINT**

CASE NUMBER: 10-2630-CMM

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about March 24, 2010, April 1, 2010, April 8, 2010, and April 29, 2010, in Miami-Dade County, in the Southern District of Florida, the defendant, JOE FREEMAN MOORER, JR., did knowingly distribute, and possess with intent to distribute, a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Special Agent with the United States Drug Enforcement Administration and that this complaint is based on the following facts:

SEE AFFIDAVIT.

DAVID LEE HIBBS, SPECIAL AGENT
U.S. DRUG ENFORCEMENT ADMINISTRAATION

Sworn to before me, and subscribed in my presence,

MAY 5, 2010      at    Miami, Florida
Date                                                    City and State

CHRIS A. McALILEY
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer          Signature of Judicial Officer

# AFFIDAVIT

I, David Lee Hibbs, Special Agent ("SA"), Drug Enforcement Administration, ("DEA"), Miami, Florida, having been duly sworn, depose and state as follows:

1. I am a Special Agent of the DEA assigned to the Miami Field Division. I have been a Special Agent of the DEA for more than eighteen years. Prior to my employment with DEA, I was a Special Agent with the U. S. Naval Investigative Service for over four years.

2. I have received specialized training in numerous aspects of criminal investigation, in particular investigation into the possession, manufacture, distribution, and importation of illegal drugs, as well as methods used to conceal and finance illegal drug transactions. I have received extensive training in these areas and also have participated in interviews and interrogations of witnesses, arrested subjects, sources of information and confidential informants regarding illegal drug trafficking and money laundering.

3. The information set forth in this affidavit comes from a confidential source and my personal involvement in this investigation, as well as information provided to me by other law enforcement officers. The confidential source (CS) utilized has proven reliable in the past, and the information provided by the CS has been corroborated by law enforcement. This affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging Joe Freeman MOORER, Jr. (hereinafter, "MOORER") with possession with the intent to distribute a controlled substance, in violation of Title 21, United

States Code, Sections 841(a)(1). Accordingly, this affidavit does not contain all the facts known to me concerning this investigation.

4. On or about March 19, 2010, the CS met with agents of the DEA and Miami Dade Police Department (MDPD) and provided details regarding alleged drug trafficking activities of MOORER. Additionally, the CS contacted MOORER via a consensually recorded telephone call to arrange a purchase of seven (7) grams of cocaine for $250. MOORER was overheard by the agents stating that he (MOORER) does not sell (cocaine) in such a small quantity. Further, the agents provided a copy of a driver license photograph of MOORER to the CS (with all identifiers remaining invisible). The CS positively identified the photograph as that of Joe MOORER.

5. Based on the information provided by the CS, on or about March 24, 2010, the DEA, working in conjunction with the Federal Bureau of Investigation ("FBI") and the Miami-Dade Police Department ("MDPD"), initiated an investigation into the drug distribution activities of MOORER and others. On the same date, the CS contacted MOORER to arrange a purchase of cocaine from MOORER. Prior to, and after, the CS's meeting with MOORER, the CS's person and vehicle were searched for contraband, weapons, and/or cash with negative results. While maintaining constant visual surveillance on the CS, investigators observed the CS meet with MOORER at the Snappers Restaurant parking lot in Miami, Florida, where MOORER provided approximately fourteen (14) grams of cocaine to the CS in exchange for $500 of pre-recorded Official Government Funds (OGF). Results of a field test of the powder indicated the presence of cocaine.

6. On or about April 1, 2010, the CS, under direction of DEA, FBI, and MDPD personnel, once again contacted MOORER and arranged to meet with MOORER for a purchase of cocaine from MOORER. The CS's person and vehicle were searched prior to the CS's meeting with MOORER, and agents maintained constant visual surveillance of the vehicle. The CS later met with MOORER at MOORER's residence, located at 1870 N.W. 55 Street, Miami, Florida (hereinafter referred to as "MOORER's residence"). This address is consistent with the address listed on MOORER's Florida driver license record as his residence. Prior to the CS's meeting with MOORER, the CS waited for MOORER outside the residence. While the CS was waiting, agents observed Charles HODGES and Sabrina HEPBURN arrive at the residence in a Pontiac Bonneville, silver in color, with Georgia license plates. HODGES told the CS that he (HODGES) and HEPBURN were going inside the residence to use a scale. My experience and training have proven to me that a scale is commonly used to weigh specific quantities of illegal drugs for distribution. Later, MOORER arrived at the residence. MOORER directed the CS to go to the back yard while MOORER walked inside the residence. A moment later, MOORER walked out to the back yard and handed the CS approximately twenty-eight (28) grams of cocaine in exchange for $1,000 of pre-recorded OGF. Again, results of a field test of the powder gave a positive indication for the presence of cocaine.

7. Continuing on or about April 1, 2010, HODGES and HEPBURN departed MOORER's residence in the Pontiac Bonneville and were followed by surveillance. A marked police patrol unit stopped the Pontiac for operation of a

motor vehicle without proper registration. A field interview by police resulted in a consent to search the Pontiac, and approximately forty (40) grams of marijuana was discovered under the driver's seat.

8. On or about April 8, 2010, DEA and MDPD utilized the CS to make a controlled purchase of approximately sixteen (16) grams of crack cocaine from MOORER using $525.00 pre-recorded OGF. The CS was searched before and after the meeting with MOORER, with negative results. Investigators maintained constant visual surveillance of the CS's vehicle. The CS was initially observed by surveillance meeting with MOORER away from MOORER's residence. There, the CS requested cocaine from MOORER in the form commonly known as "crack" or cocaine base. The CS then departed from the area under surveillance while MOORER was subsequently observed entering his residence with another unidentified male. The CS later returned to, and then entered, MOORER's residence. The CS exchanged $525.00 of pre-recorded OGF for a substance appearing to be crack cocaine while standing inside MOORER's residence. A subsequent field test of the substance MOORER provided to the CS positively indicated the presence of cocaine. The CS reported that, while he/she was inside MOORER's residence, he/she saw scales and observed cocaine that was in the process of being converted to "crack" cocaine. During and immediately after the CS's visit to MOORER's residence, surveillance of MOORER's residence further revealed a number of brief visits by individuals arriving in vehicles.

9. On or about April 29, 2010, DEA and MDPD utilized the CS to make a controlled purchase of approximately twenty-eight (28) grams of powder cocaine from

MOORER using approximately $1,000.00 pre-recorded OGF. The CS was searched before and after the meeting with MOORER, with negative results. The CS was also equipped with a video and audio recording device and transmitter. Investigators followed the CS's vehicle, first to a convenience store parking lot and then to MOORER's residence. The CS was observed by surveillance meeting with MOORER outside MOORER's residence. The CS then entered MOORER's residence and exchanged the approximately $1,000.00 of pre-recorded OGF for a substance appearing to be powder cocaine. A subsequent field test of the substance positively indicated the presence of cocaine.

10. Based on the foregoing facts and information, your affiant respectfully submits that there is probable cause to believe that on or about March 24, 2010, April 1, 2010, April 8, 2010, and April 29, 2010, in the Southern District of Florida, Joe MOORER did distribute, and possess with intent to distribute, a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine and cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
DAVID LEE HIBBS, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to before me on this 5th day of May, 2010.

_____
CHRIS A. McALILEY
UNITED STATES MAGISTRATE JUDGE